IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA,        )
                                 )
v.                               )    Case No. 3:10-cr-00217
                                 )    Judge Trauger
BILLY E. NICHOLS, Sr.,           )

**MEMORANDUM AND ORDER**

Pending before the court is the Motion in Limine filed by the United States (Docket No. 32), to which the plaintiff has filed a response (Docket No. 33). For the reasons discussed herein, the Government's motion will be granted in part and denied in part.

**BACKGROUND**

The defendant, Billy E. Nichols, Sr., is accused of possessing, receiving, and producing child pornography.[1] The defendant and his wife lived with their son's family. This included his son's girlfriend, Shannon Mickle, and his son's seven-year-old daughter (the defendant's granddaughter), "Child A." In April 2009, Child A allegedly told Mickle that the defendant had taken nude photos of her and had shown nude photos to her on the computer. Mickle subsequently found child pornography on one of the defendant's computers and on compact discs contained in his duffel bag.

Mickle notified the police, who obtained a search warrant. A forensic analyst examined the defendant's desktop and laptop computers, an external hard drive, and 16 CDs and found

---

[1] Unless otherwise noted, the allegations are drawn from the Criminal Complaint (Docket No. 1), the Indictment (Docket No. 4), and the parties' briefs.

approximately 3,000 images and 111 videos of sexually explicit activity involving children.[2] In addition, the search found several "morphed," or digitally altered, images of Child A, in which she appears to be engaging in sexual activity, including one image in which she appears to be performing oral sex on a man. Finally, the investigation found images of Child A in which she was nude or in various states of undress. This included 36 images on the desktop computer and 27 images on CDs. Many of these images allegedly "included a focus on the child's genital area while she was undressed." (Docket No. 32 at 3.)

The defendant has been indicted on four counts: (1) production of child pornography, in violation of 18 U.S.C. § 2251(a); (2) receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); (3) possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and (4) possession of morphed child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The defendant intends to plead guilty to Counts Two, Three, and Four.

Count One, alleging production of child pornography, is premised on the nude and semi-nude photos of Child A (collectively, the "nude photos"). At trial, the defendant will argue that he took these photos not for sexual purposes, but to prove that he did not molest Child A.

## ANALYSIS

The Government has filed this motion *in limine* in anticipation of the defendant's request to exclude evidence relating to Counts Two, Three, and Four – that is, all of the pornographic images and videos recovered by the forensic investigation, aside from the nude photos of Child

---

[2] Some of the images on the computers had been deleted and were recovered from "free space" on the hard drive.

A – from the trial on Count One.

**I.    Intrinsic Evidence**

First, the Government argues that all of the images and videos recovered in the forensic investigation are admissible because they are *res gestae*, or are "inextricably intertwined" with the nude photos of Child A. (Docket No. 32 at 4.)

Federal Rule of Evidence 404 generally prohibits the admission of "[e]vidence of a person's character . . . for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). But the Sixth Circuit has recognized the difference between evidence of "extrinsic" acts, which fall within Rule 404's prohibition, and "intrinsic" acts, which do not:

> [W]hen the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed "extrinsic." "Intrinsic" acts, on the other hand, are those that are part of a single criminal episode. Rule [404] is not implicated when the other crimes or wrongs [are] part of a continuing pattern of illegal activity.

*United States v. Gonzalez*, 501 F.3d 630, 639 (6th Cir. Ohio 2007) (quoting *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995)); *see also United States v. Henderson*, 626 F.3d 326, 338 (6th Cir. 2010) ("Where the challenged evidence is 'intrinsic' to, or 'inextricably intertwined' with evidence of, the crime charged, Rule [404] is not applicable."); *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) ("*[R]es gestae* evidence consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.").

The cases cited by the Government, however, dealt with vastly different factual

circumstances than those present in this case. In *Gonzalez*, the defendant was charged with drug distribution. The court allowed evidence that the defendant had engaged in earlier drug deals with the same co-conspirators, because it "[could] be seen as a continuing pattern of criminal activity and even a necessary predicate for the charged offense." *Gonzalez*, 501 F.3d at 639. In *Henderson*, the defendant was charged with murder. The trial court, without objection, allowed the testimony of witnesses who recounted the defendant's statements about the victim, even though the testimony revealed that the defendant committed other, collateral crimes. *Henderson*, 626 F.3d at 338-39.

Here, the Government argues that all of the images and videos recovered from the defendant are inextricably intertwined because (1) the defendant collected child pornography around the same time that he photographed his granddaughter and (2) because the various images were located on the same computers and on CDs that were stored together. (Docket No. 32 at 4.)

The court agrees that any morphed images featuring Child A engaging in sexual conduct are inextricably intertwined with the nude photos of Child A. It is possible, for example, that the defendant planned to digitally alter the nude photos by placing Child A into more explicit sexual situations; this would be similar to the continuing pattern of criminal activity discussed in *Gonzalez*. In any event, all of the photos featuring Child A relate to the defendant's specific sexual interest in his granddaughter. Thus, the morphed photos of Child A are admissible as intrinsic evidence.

But the other, unrelated child pornography that the defendant possessed is not directly

4

related to the nude photos of Child A.[3] Such evidence is not necessary to "complete the story" of the nude photos. Instead, these photos and videos simply reveal that the defendant had a general predilection for child pornography. Without a more direct connection to the nude photos, this evidence cannot be considered "intrinsic" to the defendant's production charge. *See, e.g.*, *United States v. Heller*, No. 3:10-cr-161, 2010 U.S. Dist. LEXIS 126081, at *9 (E.D. Va. Nov. 30, 2010) ("In sum, there is no evidence that the [pornographic] images in the PowerPoint files and the CDs and DVDs are part of the same collection or are inextricably intertwined with or related to each other.").

## II.  Rule 404(b)

---

[3] The court's own research has revealed cases in which courts found that child pornography was "inextricably intertwined" with the defendant's charged conduct. For example, in *United States v. Angle*, 234 F.3d 326 (7th Cir. 2000), the defendant was charged with possession and receipt of child pornography. The defendant had ordered pornography from undercover investigators. *Id.* at 330. Subsequently, when he was returning from Mexico, Customs agents found a videotape in the defendant's possession that apparently contained child pornography. *Id.* at 331. After this bust, the defendant told the undercover investigators not to ship his order. *Id.* The Seventh Circuit found that evidence regarding the Customs encounter was admissible:

> [T]he challenged evidence was "inextricably" connected with the evidence of the charged offenses and also helped to complete the story regarding the charged offenses (*e.g.*, the evidence provided a potential explanation for why Angle delayed shipment of his order of child pornography videotapes, why he arranged for the deletion of pornography contained on computer equipment, and why no computer hard drive was recovered).

*Id.* at 343; *see also United States v. Owens*, No. 2:09cr6, 2010 U.S. Dist. LEXIS 37134, at *9-10 (N.D. Miss. Mar. 12, 2010) (explaining that certain evidence was "intrinsic" because it "was a necessary predicate to explain how the [relevant] images came into Owens's possession").

Here, in contrast, the unrelated pornography contained on the defendant's computer is not necessary to "complete the story" regarding the nude photos of Child A.

5

Alternatively, the Government argues that evidence of the unrelated child pornography is admissible under Rule 404(b) to show the defendant's intent. (Docket No. 32 at 5.) Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts . . . [may] be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The Government argues that "the collected images . . . demonstrate that the defendant's intent was to produce sexually explicit material, as defined in 18 U.S.C. § 2256(2)(A)(v)." (*Id.*)

The determination of whether the unrelated pornography is admissible requires an examination of the relevant criminal statute. Count One charges the defendant with violation of 18 U.S.C. § 2251(a), which provides for the punishment of "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." To secure a conviction under this provision, the Government must prove beyond a reasonable doubt that:

> "(1) [T]he victim was less than 18 years old; (2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (3) the visual depiction was produced using materials that had been transported in interstate or foreign commerce."

*United States v. Broxmeyer*, 616 F.3d 120, 124 (2d Cir. 2010) (quoting *United States v. Malloy*, 568 F.3d 166, 169 (4th Cir. 2009)).

Here, the case centers on whether the nude photos of Child A represent "sexually explicit conduct." Section 2256 of the statute defines "sexually explicit conduct" to include "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). Whether an

6

image is lascivious depends, in part, on the photographer's subjective intent. *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009).

In *Brown*, the Sixth Circuit explained the test for "lasciviousness."[4] In that case, hundreds of images of child pornography were recovered from the defendant's computer. *Id.* at 676. Investigators also found photos and videos of the defendant's three-year-old step-granddaughters naked in a bathtub, on the toilet, and on a bed. *Id.* Approximately six of the photos focused on the girls' pubic areas, and one image depicted one girl "lying on her back, using both hands to spread her vagina open." *Id.* The defendant pleaded guilty to a violation of 18 U.S.C. § 2251(b), *id.* at 675, and, in determining the applicability of a sentencing enhancement, the district court was called upon to determine whether the defendant had exploited more than one minor. After reviewing the images of the defendant's granddaughters, as well as other pornographic images in the defendant's possession, the court determined that he had. *Id.* at 677. The district court found that many of the images were "lascivious," particularly in light of the defendant's collection of child pornography. *Id.* at 679-80.

On appeal, the Sixth Circuit addressed the legal definition of "lascivious." The Sixth Circuit, along with essentially every other circuit, has adopted the six-factor test for lasciviousness set forth in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986):

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual

---

[4] Neither party addressed *Brown* in their briefs.

activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Brown*, 579 F.3d at 680. This list of factors "is not exhaustive, and an image need not satisfy every factor to be deemed lascivious." *Id.* (quotation marks omitted).

*Brown* focused on the sixth factor – whether the photographer intended or designed to elicit a sexual response in the viewer. The court surveyed case law from other circuits, noting that some courts look only at the four corners of the document to determine the photographer's intent, whereas other courts consider evidence showing the subjective intent of the photographer. *Id.* at 682-83. The court noted that, "while the context in which an image was taken likely helps a factfinder understand whether an image was intended to elicit a sexual response in the viewer, there is a countervailing and significant risk that a context-specific test could reach too broadly and 'over-criminalize' behavior." *Id.* at 683.

Ultimately, the court settled on a middle-ground approach:

> In light of these competing concerns, we find that it is appropriate to apply a "limited context" test that permits consideration of the context in which the images were taken, but limits the consideration of contextual evidence to the circumstances directly related to the taking of the images.
>
> A number of factors can illuminate the context in which

> photographs were taken. These include, *inter alia*, evidence about
> (1) where, when, and under what circumstances the photographs
> were taken, (2) the presence of other images of the same victim(s)
> taken at or around the same time, and (3) any statements a
> defendant made about the images. Consideration of these factors
> can help factfinders consider the way a defendant "arranged the
> poses and took the photographs" . . . , and can help them resolve
> close judgment calls about whether an image inadvertently focuses
> on a child's genitalia, or whether it is intended to elicit a sexual
> response in the viewer.
>
> However, we explicitly reject consideration of factors that do not
> relate directly to the taking of the images, such as past bad acts of
> the defendant, the defendant's possession of other pornography
> (pornography of another type or of other victims), and other
> generalized facts that would relate only to the general
> "unseemliness" of the defendant. This will avoid the undue
> prejudice associated with criminalizing behavior not targeted by
> the statute, and thus will avoid the constitutional concerns
> discussed above.

*Id.* at 683-84 (footnote omitted).

*Brown* is directly applicable here. The defendant's intent is only relevant to the extent that it informs the factfinder's determination of whether the nude photos of Child A are lascivious. Although the *Brown* court was not speaking in the context of a Rule 404(b) motion *in limine*, it did explicitly discuss what types of evidence the Government may use to prove a defendant's intent in photographing a nude child.

Under *Brown*, this court must exclude evidence of the defendant's collection of unrelated child pornography. Indeed, the Sixth Circuit "explicitly reject[ed] consideration of . . . the defendant's possession of other pornography (pornography of . . .other victims)." *Id.* at 684. With the exception of the morphed images of Child A, none of the images or videos in the defendant's possession "relate directly to the taking of the" nude photos of Child A. *Id.* Thus,

9

the factfinder – here, the jury – is barred from considering the unrelated pornography in determining whether the nude photos are lascivious.[5]

## **CONCLUSION**

For all of the reasons discussed herein, the Government's Motion in Limine (Docket No. 32) will be **GRANTED IN PART** and **DENIED IN PART**. Evidence of the defendant's morphed images of Child A is admissible because it is inextricably intertwined with the nude photos of Child A and because it is probative of intent under Rule 404(b), but evidence of the defendant's unrelated images and videos is not admissible. At the pre-trial conference, the court and the parties will discuss how to circumscribe the admissible evidence, if necessary, pursuant to Federal Rule of Evidence 403.

It is so Ordered.

Entered this 7th day of March 2011.

_____
ALETA A. TRAUGER
United States District Judge

---

[5] Conversely, the factfinder may consider "the presence of other images of the same victim(s) taken at or around the same time." *Brown*, 579 F.3d at 684. The morphed images of Child A are thus directly relevant to the "lasciviousness" determination.